KING v BUHL OPTICAL COMPANY

Ohio Appeals, 8th Dist, Cuyahoga Co.

No. 17104.   Decided Feb. 19, 1940

M. H. Dixon, Cleveland, for plaintiff-appellant.

E. A. Binyon, Cleveland, for defendant-appellee.

## OPINION

By MORGAN, J.

The plaintiff appellant brought her action in the Municipal Court of Cleveland in which she claims that she had purchased eye glasses from the defendant, which were improper and unsuited to her eyes and which seriously damaged her eyesight.

The plaintiff offered evidence of professional optometrists at the trial to sustain her claim that the glasses furnished her were not suited to her eyes and that she had received substantial injury from using them.

One of the defenses of the defendant was that it was not the owner of any business in Cleveland at the time the plaintiff purchased her eye glasses, inasmuch as the defendant had disposed of the business to one Dr. LaDue and that the glasses were sold to the plaintiff by Dr. LaDue and the examination of plaintiff's eyes was made by a person employed by Dr. LaDue.

At the conclusion of plaintiff's evidence counsel for the defendant moved the Court to arrest testimony and to enter judgment for the defendant on the ground that there was no evidence produced by the plaintiff to show that the defendant company was the owner of the store which sold plaintiff her eye glasses.

The court granted the motion of the defendant and plaintiff's counsel took his exceptions.

The defendant admitted that it started an optical business in Cleveland in 1936, but claimed that shortly after-

wards in the same month it entered into a written contract with Dr. LaDue for the sale of said business and that Dr. LaDue continued to operate said business until August, 1937, when ownership was resumed by the defendant company on the failure of Dr. LaDue to comply with the terms of his purchase contract.

Plaintiff claims that the defendant company was at all times the real owner of the business and that Dr. LaDue was really operating it at all times for the defendant. She further claims that the arrangement between the defendant and Dr. LaDue was entered into because of a decision by the Supreme Court of Ohio made on June 3, 1936, in the case of **State ex Bricker v Buhl Optical Company, 131 Oh St 217,** which decided that the defendant, a corporation, could not engage in the practice of Optometry in Ohio.

The defendant claims that it sold its business at 715 Euclid Avenue, Cleveland, Ohio, to Dr. LaDue on June 11, 1936.

To sustain her claim that the defendant was the real owner of the business in Cleveland at all times, and that she purchased her eye glasses from the defendant, the plaintiff introduced the following evidence.

When the defendant, as it claims, took back the business from Dr. LaDue in the summer of 1937, a Dr. Grossberg was placed in charge. The evidence is uncontradicted that Dr. Grossberg was never employed by Dr. LaDue. When asked whether or not he had been transferred to Cleveland by the defendant on June 19, 1937, the day when the plaintiff claims she purchased her eye glasses, Dr. Grossberg answered that he thought it was before. Dr. Grossberg was transferred from a Dayton office by Mr. Berger, the General Manager of the defendant company.

Dr. Grossberg testified that he managed the business in Cleveland from June 1937, to March, 1938. When asked whether or not he had any business relations with the plaintiff, he testified that she was already a customer before he took charge, but that when he arrived, "the glasses were there and I delivered them." This testimony indicated that the plaintiff had been examined for eye glasses previously but that they were delivered to her after the defendant admittedly was in complete control of the business.

On cross-examination by defendant's counsel, Dr. Grossberg testified that for the first two, three or six weeks (he was uncertain as to the exact time) he did not have a contract with the defendant. Such contract between the parties was later signed on September 18, 1937.

Dr. LaDue was called as a witness by the plaintiff and testified that he entered into a written contract with the defendant and took a sub-lease on the premises in June, 1936. He did not produce the contract, and he said he was unable to locate it. He testified that he did not pay the Buhl Optical Company any consideration for the business and when he was asked whether or not he had any control of the business, the answer was "no". He said that the sub-lease was never delivered to him. He said that he had control so far as hiring and firing help, but that he did not pay any of the bills. That all bills contracted in the business were forwarded by him to the defendant at Pittsburgh. Also, that he did not purchase any stock and while he did not receive a salary he had a drawing account; that while the contract provided for a payment of $250.00 a month, he made no such payment to the defendant; that he was hired in June, 1936, by Dr. Stapsy, the president of the company, who was present at the trial. All receipts were placed in the bank in the name of the defendant company, and checks on this account were drawn by the defendant from its Pittsburgh office. The employees of the company were all paid by check from Pittsburgh and he also received his check from Pittsburgh.

On cross-examination, the witness was asked whether or not he did not pay $3,000.00 on the contract before the bill of sale was delivered to him. The witness denied that he paid $3,000.00 on the contract, and his evi-

dence taken as a whole, clearly indicates that he paid nothing on the contract.

Advertising was carried in the Cleveland newspapers under the name of The Buhl Optical Company, Dr. LaDue, Owner. He also made the reports to the Internal Revenue Department as owner, but all payments were made for all bills contracted, by checks from the Pittsburgh offices of the defendant company. All of these reports were made out in the Pittsburgh offices of the company and were sent to Dr. LaDue for his signature.

Dr. LaDue stated that the contract was cancelled in August, 1937, and that "no money exchanged hands".

On further examination, he again testified that while he was supposed to be the owner of the store, he did not do any buying at all, and the checks to pay the employees always came from the Pittsburgh offices of the Company.

Dr. Stopsy, the president of the company, was called for cross-examination by counsel for the plaintiff, and he was asked to produce the contract with Dr. LaDue. He testified that he did not have the contract and that he did not bring it with him from Pittsburgh.

Although the claim of the defendant, that it was not the owner of the business at 715 Euclid Avenue, Cleveland, Ohio, from June, 1936 to August, 1937, was based on the contract with Dr. LaDue, the plaintiff was unable to secure a copy of the contract to place it in evidence, and the trial court granted the defendant's motion for a directed verdict without seeing the contract.

To show a motive for placing the business in the name of Dr. LaDue, the plaintiff offered evidence to show that the decision in **State ex Bricker v The Buhl Optical Company, 131 Oh St 217,** was handed down just one week before the making of the contract with Dr. LaDue. This evidence was objected to by the defendant, and the objection was sustained. We think the plaintiff was entitled to this evidence, and its rejection was error.

It is elementary that the plaintiff was entitled to have the most favorable construction placed by the court upon the evidence introduced in her behalf to sustain her case. It seems to us clear that this was not done in this case. There was much more than a scintilla of evidence offered by the plaintiff to show that Dr. LaDue was never the real owner of the business although the forms of ownership were maintained in making all public reports. There was cogent evidence offered by plaintiff to show that defendant never ceased to be the real owner of the business in Cleveland at all times, including the time when plaintiff purchased her eye glasses, and the placing of the business in the name of Dr. LaDue was a concession made necessary by the unfavorable result to the defendant of the case in **131 Oh St 217.**

For the reasons stated, this case will be reversed and remanded to the Municipal Court of Cleveland for a new trial.

TERRELL, PJ., concurs.
LIEGHLEY, J., dissents.